James H. HUNTER, on behalf of himself and all others similarly situated, Plaintiff,

v.

GREENWOOD TRUST COMPANY, Defendant.

Civ. A. No. 92–1122 (JBS).

United States District Court, D. New Jersey.

Nov. 24, 1992.

Paul R. Rosen, P.C., Parkade Building, Camden, NJ, Michael D. Donovan [Admitted Pro Hac Vice], Greenfield & Chimicles, Haverford, PA, Ann Miller [Admitted Pro Hac Vice], Spector, Gadon & Rosen, Philadelphia, PA, for plaintiff.

Sean T. O'Meara, Steven Mignogna, Archer & Greiner, Haddonfield, NJ, Alan S. Kaplinsky [Admitted Pro Hac Vice], Burt M. Rublin [Admitted Pro Hac Vice], Wolf, Block,

Schorr & Solis–Cohen, Philadelphia, PA, for defendant.

## *OPINION*

SIMANDLE, District Judge:

Presently before the court is the motion by plaintiff, James H. Hunter, to remand the present matter to the Superior Court of New Jersey, Camden County, pursuant to 28 U.S.C. § 1447(c). Plaintiff's motion requires this court to determine whether it has federal question or diversity jurisdiction over plaintiff's action. For the reasons stated herein, plaintiff's motion is granted because this court lacks subject matter jurisdiction to hear plaintiff's claims.

### I. *Background*

Plaintiff, James H. Hunter, commenced this action in the Superior Court of New Jersey, Camden County, with the filing on March 6, 1992, of a Class Action complaint against defendant, Greenwood Trust Company ("Greenwood Trust"), a state chartered bank insured by the Federal Deposit Insurance Corporation ("FDIC") and located in New Castle, Delaware, alleging that Greenwood Trust's practice of charging late fees on credit cards issued to New Jersey residents violates New Jersey consumer protection law as well as New Jersey common law. Specifically, plaintiff's claims are brought on behalf of all New Jersey residents who are or have been holders of a Discover credit card ("Discover Card") issued by Greenwood Trust.

The Discover Card permits Greenwood Trust to lend money on an open-end credit basis to borrowers throughout the United States, including New Jersey. The terms and conditions governing the use of Greenwood Trust's Discover Card are set forth in the Cardmember Agreement ("Agreement"). The Agreement provides, *inter alia*, that a cardmember must make a specified minimum monthly payment on account of outstanding balances, and a failure to do so by the due date constitutes a default. The Agreement further provides for the imposition of a $10 late charge if the specified minimum pay-

ment is not paid within 20 days of the due date.

According to plaintiff, Greenwood Trust issued a Discover Card to him sometime in or around 1985, and he thereafter used it to purchase goods and services in New Jersey primarily for personal, family, and household purposes. From March, 1990 through December, 1991, plaintiff admittedly did not always pay the minimum monthly installment due on his account as stated on his monthly billing statements from Greenwood Trust. In its subsequent billing statements to plaintiff, Greenwood Trust imposed at least three separate late charges of $10 each. These late charges were added to plaintiff's unpaid balance as reflected in his monthly billing statements, and interest was then charged on the resulting balance. Plaintiff has since made payments to Greenwood Trust to reduce his unpaid balance, paying both the late charges and the interest accumulated thereon.

As a result, the plaintiff filed the instant action alleging that Greenwood Trust willfully failed to comply with the New Jersey Consumer Fraud Act ("Consumers Act"), *N.J.S.A.* 56:8–1, et seq., as it knowingly contracted for, charged, and collected late fees prohibited by *N.J.S.A.* 17:9A–59.7.[1] Plaintiff seeks reimbursement of all late fees as well as an injunction pursuant to *N.J.S.A.* 17:9A–59.7, which prohibits credit card issuers such as Greenwood Trust from imposing any charges on New Jersey consumers other than those permitted by the Consumers Act. The injunction would serve to restrain Greenwood Trust from continuing its practice of contracting for, charging, and collecting late fees from Discover Card holders in New Jersey and to prohibit Greenwood Trust from communicating adverse payment information about the nonpayment of late fees by plaintiff to any credit bureaus. Plaintiff alternatively seeks recovery of all credit card late charges under the New Jersey common law theory of unjust enrichment.

On or about March 10, 1992, Greenwood Trust filed a Notice of Removal with this court and with the Superior Court of New

---

1. New Jersey law limits late fee charges which may be imposed by New Jersey banks to a set figure of the lesser of $5.00 or 5% of the past due installment payment. *See N.J.S.A.* 17:9A–59.7 A.

Jersey allegedly based upon both federal question and diversity jurisdiction. According to Greenwood Trust, removal is proper on federal question jurisdiction grounds since this action necessarily requires the construction and interpretation of federal banking laws, namely the National Bank Act, 12 U.S.C. § 85, and Section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), 12 U.S.C. § 1831d(a). Furthermore, Greenwood Trust asserts that removal is supported by diversity jurisdiction since the parties are citizens of different states and the amount in controversy exceeds $50,000. After the case was removed to this court, the plaintiff filed the instant motion to remand this matter to New Jersey state court claiming an inadequate basis for federal court jurisdiction.

## II. *Discussion of Law*

■ A state court action may properly be removed to federal court only if it is an action over which the federal court would have had original jurisdiction. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987); *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 19 n. 18, 103 S.Ct. 2841, 2851 n. 18, 77 L.Ed.2d 420 (1983); *Trent Realty Associates v. First Fed. Sav. & Loan Assoc.,* 657 F.2d 29, 36 (3d Cir.1981). The United States Supreme Court long ago recognized that "the first and fundamental question is that of jurisdiction ... [t]his question the court is bound to ask and answer itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Bender v. Williamsport Area School District,* 475 U.S. 534, 547, 106 S.Ct. 1326, 1334, 89 L.Ed.2d 501 (1986) (quoting *Mansfield C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884)).

■ It is axiomatic that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto. U.S. Const. art. III, § 2, cl. 1; *Bender,* 475 U.S. at 547, 106 S.Ct. at 1334; *Employers Ins. of Wausau v. Crown Cork & Seal Co.,* 905 F.2d 42, 45 (3d Cir.1990). Congress has specifically provided two independent bases for subject matter jurisdiction in the federal courts—federal question jurisdiction and diversity jurisdiction—under 28 U.S.C. §§ 1331 & 1332. Without the existence of at least one of these bases, a controversy is not properly removable from state to federal court. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429–30; *Krashna v. Oliver Realty, Inc.,* 895 F.2d 111, 113 (3d Cir.1990); *United Jersey Banks v. Parell,* 783 F.2d 360, 365 (3d Cir. 1986), *cert. denied, First Fidelity Bancorporation v. Parell,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986).

■ When removal is sought, the removing party bears the burden of proving that federal subject matter jurisdiction exists, that removal was timely, and that removal was proper. *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Steel Valley Auth. v. Union Switch and Signal Division,* 809 F.2d 1006, 1011 (3d Cir.1987), *cert. dismissed,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988); *Moore v. DeBiase,* 766 F.Supp. 1311, 1315 n. 5 (D.N.J.1991). Significantly, the removal statutes are to be strictly construed against removal and all doubts are to be resolved in favor of remand. *Boyer,* 913 F.2d at 111; *Steel Valley Auth.,* 809 F.2d at 1010. Nevertheless, a "federal court should be cautious about remand, lest it erroneously deprive a defendant of the right to a federal forum." 14A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters 2d* § 3721 at 218–19 (2d ed. 1985); *see also Crier v. Zimmer,* 565 F.Supp. 1000, 1001 (E.D.La.1983) (recognizing that a federal district court should not erroneously deprive a defendant of the right to a federal forum). In light of these pronouncements, Greenwood Trust must establish that plaintiff could have originally filed this matter in federal court based on either federal question or diversity jurisdiction.

### A. *Federal Question Jurisdiction*

■ Removal of a state court action based on federal question jurisdiction is proper only if the action asserts a claim "arising under the Constitution, laws, or

treaties of the United States." 28 U.S.C. §§ 1331, 1441(b); *see United Jersey Banks*, 783 F.2d at 365. Ordinarily, a case "arises under" federal law only when a federal question appears on the face of the plaintiff's "well-pleaded complaint." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429 (citing *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)); *Franchise Tax Board*, 463 U.S. at 10, 103 S.Ct. at 2846–47; *United Jersey Banks*, 783 F.2d at 365. Under the well-pleaded complaint rule, a case cannot be removed based upon a federal defense to a state law claim, including the defense of preemption, even if the defense is anticipated in the complaint and both parties concede that it is the only question at issue. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430; *Franchise Tax Board*, 463 U.S. at 12, 103 S.Ct. at 2847–48; *Railway Labor Exec. v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 939 (3d Cir.1988). Rather, "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Board*, 463 U.S. at 10–11, 103 S.Ct. at 2847 (quoting *Gully*, 299 U.S. at 112, 57 S.Ct. at 97); *see also United Jersey Banks*, 783 F.2d at 366 (recognizing that a substantial, disputed question of federal law must be a necessary element of one of the well-pleaded state claims for federal jurisdiction to exist).

■■■■ An independent corollary to the well-pleaded complaint rule which similarly confers federal question jurisdiction for removal purposes is the "complete preemption doctrine." *Krashna*, 895 F.2d at 113; *Railway Labor*, 858 F.2d at 939. Under complete preemption, the preemptive force of a statute can be "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule." *Krashna*, 895 F.2d at 113 (quoting *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430). The complete preemption doctrine holds that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. *Krashna*, 895 F.2d at 113–14; *Railway Labor*, 858 F.2d at 939. For the purposes of removal, "[o]nce an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Krashna*, 895 F.2d at 114 (quoting *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430).[2] Defendant does *not* invoke the complete preemption doctrine as a basis for federal question jurisdiction, so this court will not consider whether federal preemption arises through the federal banking statutes.[3] Thus, in order to establish federal

2. Complete preemption differs from ordinary preemption in that ordinary preemption governs what substantive law—federal or state—ought to control a claim styled under state law. *Krashna*, 895 F.2d at 114 n. 3. Whether federal law preempts a certain state claim is a question of Congressional intent. *Id.* (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985)). If Congress intended federal law to preempt the state law claim, then the federal or state court must dismiss it under the principles of ordinary preemption. *Id.*

3. This court will not address the propriety of removal based upon the complete preemption doctrine since defendant, as the party with the burden of proving that removal is proper, has made it abundantly clear through its moving papers and at oral argument that it does not rely on the complete preemption doctrine as a basis for removal. In fact, defendant has characterized plaintiff's reference to the complete preemption doctrine in his moving papers as "completely irrelevant" and as constituting "nothing more

than a 'red herring' intended to obfuscate the fact that a federal question is presented on the face of plaintiff's own Complaint." *See* Defendant's Opposition at 5–6. This court therefore will not address complete preemption removal as defendant clearly does not rely thereon for removal purposes.

However, this court does recognize that federal courts within other circuits have recently retained jurisdiction over actions similar to the instant case on the grounds that state usury restrictions similar to the type at issue here were completely preempted by either the National Bank Act or Section 521 of DIDA because the term "interest" under both these federal statutes encompassed credit card late fees charged by national and state banks. *See, e.g., Greenwood Trust Co. v. Commonwealth of Mass.*, 971 F.2d 818 (1st Cir.1992) (holding that Massachusetts state statute prohibiting the imposition of late fees on credit card customers was preempted by Section 521 of DIDA); *Nelson v. Citibank*, 794 F.Supp. 312 (D.Minn.1992) (holding that credit card customers' complaints alleging that national

question jurisdiction defendant Greenwood Trust must demonstrate that plaintiff's well-pleaded complaint presents a federal question on its face.

### The Well–Pleaded Complaint Rule

■■■■■ This court begins with the proposition that in filing a complaint a plaintiff may choose not to assert a federal right that is available and rely on state law since ultimately he is the master of his own claim. *Krashna,* 895 F.2d at 113; *Allstate Ins. Co. v. 65 Sec. Plan,* 879 F.2d 90, 93 (3d Cir.1989); *United Jersey Banks,* 783 F.2d at 365. Plaintiff herein asserts that he, as master of his own claim, has alleged only New Jersey state law claims rather than any claims "arising under" federal law thereby depriving this court of original jurisdiction and thus preventing removal of his action to the federal level. Specifically, plaintiff asserts that his complaint merely anticipated a federal preemption defense and did not, as defendant suggests, allege a private cause of action under federal law. Greenwood Trust, on the other hand, claims that plaintiff has pled a federal question on the face of his complaint in accordance with the "well-pleaded complaint" rule. Greenwood Trust specifically cites to the following provisions of plaintiff's complaint as support for its position:

23. Although New Jersey law clearly limits the *interest rates* that New Jersey banks and finance agencies may charge their customers, it does not limit the *interest rates* out-of-state banks may charge, even where their customers are residents of New Jersey. This is because federal law specifically addresses "interest rates" charged by national or state chartered banks. Under the National Bank Act, 12 U.S.C. § 85, out-of-state banks are permit-

ted to charge their customers any interest rate that is permitted by the law of the state in which the bank is located. Taking advantage of this law to attract the business of credit card issuers in the early 1980s, several states—most notably Delaware and South Dakota—virtually eliminated interest rate and other usury restrictions, encouraging banks such as Greenwood to locate there.

24. Although federal law permits out-of-state banks such as defendant to export to New Jersey and other states the *interest rates* permitted in their state of location, it does not permit them to export late fees or any other charges, fees or terms to a borrower's state. Yet, as evidenced by this case, state and national banks located in deregulated states, including defendant here, have knowingly and repeatedly misused and misconstrued federal authority as a pretext and vehicle to evade state laws prohibiting non-interest rate charges such as late fees or other substantive requirements such as right-to-cure notices, both of which are specifically addressed by New Jersey law.

*See* Complaint ¶¶ 23, 24 (emphasis in original).

■■■■■ According to Greenwood Trust, it is clear from the face of plaintiff's complaint that a violation of federal law is a "necessary element" of plaintiff's claims for relief since the foregoing allegations, as incorporated by reference into each of plaintiff's three claims for relief, purportedly allege that the applicable federal banking laws do not allow a bank to "export" late charges [4] and that Greenwood Trust has "knowingly and repeatedly misused and misconstrued federal authority as a pretext and vehicle to evade state laws prohibiting non-interest rate charges such as

banks' practice of adding unpaid late and over limit fees to unpaid principal and imposing interest on whole resulted in usurious rate of interest under state law, and seeking relief thereunder, raised claims that were completely preempted by the National Bank Act); *Hill v. Chemical Bank,* 799 F.Supp. 948 (D.Minn.1992) (holding that Section 521 of DIDA completely preempted the field of usury claims against federally insured state banks). For the reasons given above, these holdings have no bearing on the present motion.

4. Exportation provides the mechanism whereby a bank may continue to use favorable interest laws of its home state in certain transactions with out-of-state borrowers. *Greenwood Trust,* 971 F.2d at 827. Section 521 of DIDA specifically allows state chartered banks to "export" the favorable interest rates of the state in which they are chartered to states in which their credit card customers are located. 12 U.S.C. § 1831d(a). Thus, Section 521 of DIDA authorizes Greenwood Trust to "export" the interest rates of Delaware to its customers located in other states.

late fees." In other words, Greenwood Trust interprets these provisions as allegations that it "has abused and exceeded the usury authority conferred upon it by federal law." In addition, Greenwood Trust argues that plaintiff's complaint affirmatively alleges that its "unconscionable commercial practice, deception, fraud, false pretense, false promise and misrepresentation" in charging late fees in violation of New Jersey law entitles plaintiff to recover treble damages under the New Jersey Consumer Fraud Act. *See* Complaint ¶¶ 28, 29.

Plaintiff firmly disagrees with this interpretation of his complaint. Rather, plaintiff asserts that the federal laws are referenced in his complaint to emphasize that they are inapplicable to his claims and do not preempt the state laws involved. In addition, plaintiff contends that New Jersey law supplies the sole authority applicable to the "late fees" charged by Greenwood Trust, and any contention that federal law preempts New Jersey law so as to allow Greenwood Trust to export the state law of Delaware to New Jersey merely presents a federal preemption defense to his claims and does not establish federal jurisdiction.

■ Notwithstanding the provisions cited by Greenwood Trust, plaintiff's complaint relies solely on state law. This court is not convinced that plaintiff's mere allusion to the inapplicability of federal law and incorporation by reference of same into his three claims for relief transforms his complaint into one which on its face presents a federal question thereby causing his claims to "arise under" federal law. *See Bacardi v. Bacardi Corp.*, 677 F.Supp. 253, 256 (D.Del.1988) (recognizing that a case is not removable to federal court if a plaintiffs' complaint only contains a passing reference to a federal statute or alleges facts that could only remotely involve a federal question). Rather, it is evident that plaintiff seeks to state claims arising under New Jersey law pertaining to late fees, and references federal law only in anticipation of a defense of preemption based on federal banking laws pertaining to interest. Such an allusion, it should be understood, does not in and of itself provide a basis for federal question jurisdiction warranting removal. *See Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Franchise Tax Board,* 463 U.S. at 12, 103 S.Ct. at 2847–48; *Railway Labor,* 858 F.2d at 939.

■ Plaintiff's complaint sets forth three distinct claims for relief under New Jersey law. None of these counts refers to federal law other than through incorporation by reference to the disclaiming allusions of paragraphs 23 and 24 above. If any of these claims comes within the original jurisdiction of the federal courts, removal is proper as to the whole case. *See* 28 U.S.C. § 1441(c). Plaintiff's first claim alleges a violation of *N.J.S.A.* 56:8–2, commonly known as the New Jersey Consumer Fraud Act, through defendant's charging late fees prohibited by *N.J.S.A.* 17:9A–59.7 and seeks treble damages and reimbursement of all late fees under *N.J.S.A.* 56:8–19. Plaintiff's second claim asserts that defendant's alleged violation of *N.J.S.A.* 17:9A–59.7 warrants the institution of an injunction prohibiting defendant from reporting adverse credit information about plaintiff to credit bureaus and credit reporting agencies. Plaintiff's final claim alleges common law unjust enrichment and seeks recovery of the amount by which defendant has been unjustly enriched by charging late fees in violation of *N.J.S.A.* 17:9A–59.7.

■ It is well recognized that "a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." *Franchise Tax Board,* 463 U.S. at 12, 103 S.Ct. at 2848 (quoting *Gully,* 299 U.S. at 116, 57 S.Ct. at 99). Here, plaintiff's very own claims demonstrate that the law which creates his causes of action is New Jersey state law; thus, original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of plaintiff's well-pleaded state claims. *See Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848. A straightforward application of the well-pleaded complaint rule to each of plaintiff's claims precludes original jurisdiction in the federal court.

New Jersey law establishes the standard for the imposition of late fees under *N.J.S.A.* 17:9A–59.7 independent of federal law. Federal law, namely the National Bank Act and DIDA, becomes relevant only by way of a defense to an obligation created entirely by state law, and only if plaintiff has made out a valid claim for relief under state law. Indeed, the first questions for decision in this case are not federal issues but are state law issues regarding whether New Jersey law even applies to or prohibits Greenwood Trust's actions. If New Jersey law does not apply to or prohibit Greenwood Trust's practices for whatever reasons, the defense under the federal banking statutes will never be reached. Thus, the federal issue is not an essential element of plaintiff's claims. The well-pleaded complaint rule was framed to deal with precisely such a situation.[5]

The Third Circuit Court of Appeals is in agreement with this interpretation of the well-pleaded complaint rule. The Third Circuit's decision in *United Jersey Banks v. Parell,* 783 F.2d 360 (3d Cir.1986), is highly relevant in this context. The plaintiffs therein, five state chartered banks, filed an action in state court to block a merger between two nationally chartered banks. The defendants removed the case to federal court contending that only federal law applied to the merger of the national banks and that plaintiffs' com-

plaint actually stated a federal rather than state cause of action. The first count of plaintiffs' complaint alleged that the transaction violated a provision of the New Jersey Bank Holding Company Act, *N.J.S.A.* 17:9A– 345(a). The complaint also charged that the merger would restrain commerce and tend to create a monopoly in violation of the New Jersey Antitrust Act, *N.J.S.A.* 56:9–4. This latter statute disclaimed regulation of the activities of any state or national banking institution to the extent that such activities were regulated by the federal government under federal banking laws. Plaintiffs' complaint alleged, however, that the transaction had been structured to avoid federal regulation and, therefore, that the exemption did not apply.

On appeal from a district court order that accepted jurisdiction and dismissed the action, the Third Circuit held that removal was improper based on lack of jurisdiction in the district court. Drawing on the United States Supreme Court's analysis in *Franchise Tax Board,* the Third Circuit recognized that "it is not enough that there be a substantial, disputed question of federal law. It is only if that question also is a necessary element of one of the well-pleaded state claims that federal jurisdiction can be found." *United Jersey Banks,* 783 F.2d at 366. Rejecting

---

5. Justice Cardozo addressed this concept in *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). *Gully* involved a suit by Mississippi tax authorities, claiming that First National Bank had failed to make good on a contract with its predecessor corporation whereby, according to the state, the bank had promised to pay the predecessor's tax liabilities. *Id.* at 111–12, 57 S.Ct. at 97. In rejecting the defendant's claim that the suit arose under federal law because federal law permitted the taxation of national banks and holding that removal was improper, Justice Cardozo recognized the following:

> Petitioner will have to prove that the state law has been obeyed before the question will be reached whether anything in its provisions or in administrative conduct under it is consistent with the federal rule. If what was done by the taxing officers in levying the tax in suit did not amount in substance under the law of Mississippi to an assessment of the shareholders, but in substance as well as in form was an assessment of the bank alone, the conclusion will be inescapable that there was neither tax nor debt, apart from any barriers Congress may

have built. On the other hand, a finding upon evidence that Mississippi law has been obeyed may compose the controversy altogether, leaving no room for a contention that the federal law has been infringed. The most that one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states.

*Id.* at 117, 57 S.Ct. at 99–100. Here too the most that can be said is that a question of federal law is "lurking in the background." Plaintiff's complaint does not allege any violation by Greenwood Trust of the National Bank Act or DIDA, either of which would permit removal on federal question grounds. Rather, the complaint asserts direct violations of New Jersey law which must be addressed initially before any defense grounded in federal law can be reached. Thus, the federal question will only arise, if at all, as a preemption defense to Greenwood Trust's actions under New Jersey law.

the contention that the complaint stated a federal claim because it referred to federal law, the court found that the reference was made not to establish a claim but to negate the applicability of federal law. *Id.* at 367.

The instant case represents precisely the same situation. As in *United Jersey Banks,* each of plaintiff's claims herein is based entirely on New Jersey statutory or common law, and each claim asserts only plaintiff's state-created right not to be charged late fees in violation of New Jersey law. There is no federal right or immunity that is a "necessary element" of any of these claims. Although the complaint contains one reference to Section 85 of the National Bank Act, that reference, as in *United Jersey Banks,* is intended both to describe the non-federal character of the claims and to negate jurisdiction thereunder. Thus, plaintiff's anticipation of a federal preemption defense does not convert his state law action into a federal question for the purposes of removal jurisdiction.

■ Greenwood Trust nevertheless asserts that Third Circuit authority does support removal on federal question grounds in this instance. In support of its position, Greenwood Trust cites to *Lindy v. Lynn,* 501 F.2d 1367 (3d Cir.1974), and *Westmoreland Hosp. Ass'n v. Blue Cross,* 605 F.2d 119 (3d Cir.1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980), both of which pre-date the United States Supreme Court's landmark decision in *Franchise Tax Board.*[6] Greenwood Trust relies on *Lindy* for the following proposition:

> An action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the

application of federal legal principles for its disposition.

*Lindy,* 501 F.2d at 1369. Specifically, defendant asserts that plaintiff's action arises under federal law because it requires the construction of a federal statute, namely DIDA. According to Greenwood Trust, if DIDA is interpreted as encompassing only percentage-based periodic interest rates then plaintiff's state law claims will not be preempted by DIDA; otherwise, if DIDA is construed to encompass late fees then plaintiff's claims will be preempted. Such reasoning, although technically correct, merely begs the question since the meaning of "interest rates" under DIDA is just a defense to plaintiff's claims. Thus, the construction of DIDA only arises in the context of a defense of preemption based on DIDA itself and not by virtue of plaintiff's well-pleaded complaint, which alleges state violations while merely anticipating such a defense.

This court has reservations about following the proposition of law enunciated in *Lindy* and relied upon by defendant for removal purposes. First, *Lindy* pre-dates the United States Supreme Court's decision in *Franchise Tax Board* which interprets and applies the well-pleaded complaint rule. Second, *Lindy* makes no mention of the well-pleaded complaint rule which is discussed at great length in both *Franchise Tax Board* and *United Jersey Banks* and which is critical to the present discussion regarding removal under plaintiff's complaint. According to the Third Circuit, "[t]he *well pleaded complaint rule is alive and well* and a plaintiff may [in most instances] avoid federal jurisdiction by exclusive reliance on state law" regardless of "whether or not the state law exclusively relied on is preempted by federal law."

**6.** Greenwood Trust also references the Third Circuit's very recent decision in *Smith v. Industrial Valley Title Ins. Co.,* 957 F.2d 90 (3d Cir.1992), to demonstrate its inapplicability to the present matter. This court agrees that *Smith* is inapposite but not for the reasons cited by Greenwood Trust. *Smith* held that a complaint which alleges a federal statutory violation as an element of a state cause of action does not state a claim arising under federal law where Congress has determined that there should be no private federal remedy for the violation. *Id.* at 93.

This holding is inapplicable to the present circumstances because plaintiff has not alleged a federal statutory violation as a component of his state law claims. Rather, plaintiff has exclusively alleged New Jersey state law violations and alluded to federal law as being non-applicable. Thus, *Smith* is inapposite not because, as Greenwood Trust argues, Congress has created a private federal remedy for violations of Section 521 of DIDA, but because plaintiff has not alleged a federal statutory violation as an element of his state law claims.

*Railway Labor,* 858 F.2d at 941–42 (emphasis added).

Third, the proposition of law enunciated in *Lindy* and relied on by defendant for removal is derived from the Second Circuit Court of Appeals and not Supreme Court precedent. In fact, *Lindy* does not cite to any Supreme Court precedent whatsoever. This, in and of itself, is sufficient to cast doubt upon the continued viability of *Lindy* after *Franchise Tax Board* especially because the Supreme Court has since recognized that "[t]he century-old jurisdictional framework governing removal of federal question cases from state into federal courts is best described in Justice Brennan's opinion for a unanimous Court in *Franchise Tax Board.*" *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). This court relies upon the more immediate pronouncements of *Franchise Tax Board* and its progeny. To the extent that *Lindy* may have otherwise permitted removal under the present circumstances, its pronouncements are suspect in light of more recent and relevant Supreme Court and Third Circuit authority.

Finally, the United States Supreme Court has indicated that care must be exercised in connection with the proposition of law which states that an action "arises under" federal law if it requires the construction of a federal statute. In *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Supreme Court recognized that the vast majority of cases brought under the general federal question jurisdiction of the federal courts are those in which "federal law creates the cause of action." *Id.* at 808, 106 S.Ct. at 3232. The instant case does not present such a situation. The Court also noted that it had previously recognized that a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Id.* (quoting *Franchise Tax Board,* 463 U.S. at 9, 103 S.Ct. at 2846). However, the Supreme Court indicated that its actual holding in *Franchise Tax Board* demonstrated that this statement "must be read with caution" because although the *central issue* in *Franchise Tax*

*Board* turned on the construction of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., the Supreme Court nevertheless concluded that jurisdiction was lacking. *Id.,* 478 U.S. at 809, 106 S.Ct. at 3232 (emphasis added); *see also Smith v. Industrial Valley Title Ins. Co.,* 957 F.2d 90, 92–93 (3d Cir.1992) (recognizing that the Supreme Court has advised caution with respect to finding federal question jurisdiction when a right under state law turned on the construction of federal law). Thus, contrary to what defendant may argue under *Lindy,* even if the construction of a federal statute is a critical issue in an action filed in state court, Supreme Court precedent indicates that federal question jurisdiction does not automatically obtain.

Here, unlike *Franchise Tax Board,* the construction of DIDA is not a central issue in this action. Rather, the issue of DIDA's construction merely "lurks in the background" since it represents a federal preemption defense and not a claim for relief. As mentioned earlier, the construction of DIDA may never arise as an issue if plaintiff's state claims are not actionable under New Jersey law. Thus, even exercising caution as advised by the United States Supreme Court in this context, this court cannot say that the construction of DIDA causes plaintiff's claim to "arise under" federal law thereby warranting removal.

*Westmoreland,* which relied on *Lindy* and which defendant also cites in support of removal, is distinguishable from the present circumstances. The matter involved a suit by nine hospitals against Blue Cross to vindicate their contractual right to full reimbursement of their mental health staffing costs. While the action ostensibly challenged a Blue Cross practice of deducting federal grants from the hospitals' operating costs, in reality it encompassed more. The federal agency administering the mental health programs, the Department of Health, Education and Welfare ("HEW"), had threatened to cut off the hospitals' grants if they did not negotiate a change in the practice of Blue Cross. *Westmoreland,* 605 F.2d at 122. Since the hospitals could not operate without either federal funds or Blue Cross funds, the Third

Circuit recognized that "it cannot be said that HEW was a casual bystander to the contract dispute. If the contract formed the basis of the controversy, it was the threatened HEW action the precipitated the present litigation." *Id.*

The court also observed that at least six full paragraphs of the hospitals' complaint referred to, cited or quoted language from the federal grants, federal agency interpretations and federal laws governing their funded programs. *Id.* at 123–24. In fact, the court viewed the hospitals' complaint as stating "alternative bases for relief against Blue Cross, namely, that the hospitals were entitled to relief under the contract whether it was interpreted according to state law principles *or* under the federal mental health statutes." *Id.* at 124 (emphasis in original). Unlike *Westmoreland,* the plaintiff's complaint herein is not nearly as expansive and inclusive. Plaintiff references the National Bank Act merely to anticipate a preemption defense, without quoting any of its particular provisions. In fact, only one paragraph in plaintiff's complaint specifically references federal law, and such reference is not "an averment of the mandatory sanction of federal law." *Id.* at 123. It merely anticipates a potential federal preemption defense and does not set forth a claim for relief under federal law. Furthermore, plaintiff's complaint cannot be characterized as asserting alternative federal and state claims; rather, the plaintiff asserts only state law claims to vindicate his right not to be charged late fees in violation of New Jersey law. As a result, *Westmoreland* is inapposite to the present action.

Application of the well-pleaded complaint rule to plaintiff's complaint demonstrates that the plaintiff has alleged only New Jersey state law causes of action and not a claim "arising under" the Constitution or laws of the United States. As a result, the well-pleaded complaint rule cannot serve as a basis by which Greenwood Trust can remove this action to the federal court.

### B. *Diversity Jurisdiction*

Generally, federal district courts have original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). It is undisputed that the parties herein are citizens of different states, plaintiff being a resident of New Jersey and defendant being a resident of Delaware. However, both parties disagree as to whether the jurisdictional amount in controversy is satisfied.

 It is well recognized that each class action plaintiff must satisfy the jurisdictional amount in controversy, and any plaintiff who does not must be dismissed from the case. *Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 511–12, 38 L.Ed.2d 511 (1973); *In Re School Asbestos Litigation,* 921 F.2d 1310, 1315 (3d Cir.1990), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991). However, an entire class action need not be dismissed for lack of jurisdiction over some class members because of their inability to satisfy the amount in controversy requirement; rather, a court is required to dismiss only those class members whose claims appear to a legal certainty to be less than the jurisdictional amount. *School Asbestos Litigation,* 921 F.2d at 1315. Furthermore, "where the amount in controversy is challenged, the burden of proving the matter in controversy exceeds the jurisdictional minimum rests upon the party alleging the sufficiency of the amount in controversy." *Jaconski v. Avisun Corp.,* 359 F.2d 931, 934 (3d Cir.1966). As a result, Greenwood Trust bears the burden of proving that the amount in controversy exceeds $50,000 excluding interest and costs.

 Greenwood Trust asserts that the jurisdictional amount in controversy under 28 U.S.C. § 1332 is satisfied by virtue of plaintiff's requests for treble damages for "credit libel" committed by Greenwood Trust and for injunctive relief to prevent Greenwood Trust from imposing late charges on New Jersey residents. With respect to defendant's credit libel argument, this court is not convinced that plaintiff's complaint sets forth a claim for credit libel as suggested by defendant's liberal reading of the complaint. Although it may be true that plaintiff refers to credit libel in his complaint, the mere mention of

same does not necessarily mean that relief is sought thereunder.

A plain reading of plaintiff's complaint demonstrates that he does not, as defendant suggests, seek redress for credit libel. Rather, plaintiff seeks relief for violations by defendant of the New Jersey Consumer Fraud Act for defendant's charging late fees in violation of *N.J.S.A.* 17:9A–59.7, such requested relief being monetary and injunctive. Plaintiff simply references credit libel to demonstrate the harm that may result if the requested injunctive relief is not granted in response to defendant's charging late fees in violation of New Jersey law. As a result, since the focus of plaintiff's claim is on preventing defendant from continuing to violate state law and not on recovering damages for any credit libel, it is not necessary to determine "to a legal certainty" the amount of damages that may be awarded for such a claim for the purposes of satisfying the jurisdictional amount in controversy for diversity jurisdiction.

 Absent an allegation of credit libel, Greenwood Trust must demonstrate that plaintiff's claim for injunctive relief satisfies the jurisdictional amount in controversy. Greenwood Trust argues that where injunctive relief is sought, courts have applied the "either viewpoint" rule for determining the amount in controversy, looking either to the pecuniary value of the benefit to the plaintiff or the cost of the burden to the defendant if the injunction is entered. According to Greenwood Trust, the amount in controversy

is satisfied under the "either viewpoint" rule because it would suffer losses in excess of $50,000 if the requested injunctive relief were granted.[7]

Notwithstanding defendant's assertions, the "either viewpoint" rule is not the law within this Circuit. The Third Circuit Court of Appeals has held that in a case where, as here, plaintiff seeks an injunction, the amount in controversy is measured by the value of the interest sought to be protected by the equitable relief requested. *Spock v. David,* 469 F.2d 1047, 1052 (3d Cir.1972), *rev'd on other grounds after remand, Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976).[8] Here, the interest to be protected is plaintiff's right not to be charged late fees by defendant in violation of New Jersey law. If this interest does not, to a legal certainty, exceed $50,000, then diversity jurisdiction is lacking and removal is improper.

 Plaintiff's interest in not being charged late fees has two bases: (1) it causes him to accumulate debt and (2) it adversely affects his credit rating. None can dispute that by charging plaintiff late fees, Greenwood Trust causes him to accumulate debt at a rate of at least $10 per month. However, such charges would have to accumulate over an inordinate amount of time in order to satisfy the jurisdictional amount in controversy for diversity jurisdiction to exist. Furthermore, plaintiff's claimed interest in a favorable credit rating cannot be protected by

---

7. To support that it would suffer losses exceeding $50,000 if an injunction were granted, Greenwood Trust has submitted the affidavit of John B. Wertz, the Vice President of Greenwood Trust, attesting that its cost of complying with the proposed injunctive relief would amount to approximately $75,000 to $100,000, independent of the revenues that Greenwood Trust would lose by decreasing the amount of late charges for New Jersey cardmembers. Mr. Wertz attributes his estimate to the costs associated with making computer programming modifications and mailing notification to all New Jersey cardmembers of the change in the terms of the Cardmember Agreement as well as to "several hundred thousand" cardmembers who do not regularly receive monthly statements because they have not incurred any current charges on their Discover Card.

8. Numerous courts within the Third Circuit, including several from the District of New Jersey, have relied upon *Spock* in holding that the amount in controversy for diversity jurisdiction is measured by the value of the interest sought to be protected by the equitable relief requested. *See, e.g., Bryfogle v. Carvel Corp.,* 666 F.Supp. 730, 732 (E.D.Pa.1987); *Hirsch v. Jewish War Veterans,* 537 F.Supp. 242, 243 (E.D.Pa.1982); *Handsome v. Rutgers University,* 445 F.Supp. 1362, 1364–65 (D.N.J.1978); *Chambers v. Klein,* 419 F.Supp. 569, 576 (D.N.J.1976); *see also Northeastern Pa. Nat. Bank & Trust Co. v. Sandvick Steel, Inc.,* 325 F.Supp. 651, 654 (M.D.Pa. 1971) (adopting the "plaintiff's viewpoint" rule which holds that in injunction cases, a court should look only to the benefit to the plaintiff to determine the amount in controversy for diversity jurisdictional purposes).

an injunction under the present circumstances.

An injunction preventing Greenwood Trust from imposing late fees upon plaintiff's Discover Card account will not protect his credit rating. Plaintiff's credit rating was originally tarnished and will continue to be adversely affected by his failure to pay the minimum amount due on his account on time. The imposition of late charges is merely a penalty assessed by Greenwood Trust for plaintiff's own delinquency with respect to his account. If plaintiff were seeking an injunction either to prevent Greenwood Trust from reporting his unfavorable credit history or to avoid paying his minimum monthly installment when due, then an injunction might protect his credit rating; otherwise, an injunction against the imposition of late fees does nothing to shield plaintiff's credit history from impairment which he originally caused by merely failing to pay the monthly minimum. His late *payment,* not his resultant incurring of a late *fee,* impairs his credit. The abolition of a late fee would not somehow render his late payments timely. Thus, plaintiff's interest in not being charged late fees to protect his credit rating is not an equitably protectable interest which can be valued for the purposes of the amount in controversy for diversity jurisdiction. Since the only interest which can be protected by an injunction, and therefore valued, is the prevention of debt accumulation at a rate of at least $10 per month, the jurisdictional amount in controversy does not, to a legal certainty, exceed $50,000.

This court therefore holds that plaintiff's interest in not being assessed late fees by defendant does not, to a legal certainty, exceed $50,000. As a result, Greenwood Trust may not assert diversity jurisdiction as a basis for removal of plaintiff's action to the federal level.[9]

### III. *Conclusion*

Removal of the present matter is inappropriate because neither federal question nor diversity jurisdiction exists to permit removal. Plaintiff's well-pleaded complaint does not state a claim that "arises under" the Constitution or laws of the United States. Rather, the complaint relies on New Jersey state law and merely refers to federal law for the purpose of negating the applicability of federal law; these references are insufficient as a basis for removal under federal question jurisdiction. Although the parties are citizens of different states, diversity jurisdiction does not exist because the jurisdictional amount in controversy is not satisfied. Plaintiff does not seek damages for credit libel for purposes of the amount in controversy, and the value of plaintiff's interest in not being charged late fees in violation of New Jersey law does not exceed $50,000. Therefore, removal is improper because this court lacks subject matter jurisdiction over this action. An appropriate order will be entered granting plaintiff's motion for remand to the Superior Court of New Jersey.

### ORDER

This matter having come before the court upon motion by plaintiff to remand this action to the Superior Court of New Jersey pursuant to 28 U.S.C. § 1447(c); and

Having considered all submissions and oral arguments of counsel; and

For reasons stated in the Opinion of today's date;

IT IS this 23rd day of November, 1992 hereby

ORDERED that plaintiff's motion is GRANTED, and this matter is REMANDED to the Superior Court of New Jersey, Law Division, Camden County, Docket No. L–0250992.

---

9. Because this court holds that removal is improper, it need not address the abstention argument proffered by plaintiff in support of his motion.