

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2002

# US Express Lines Ltd v. Higgins

Precedential or Non-Precedential:

Docket 0-4205

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"US Express Lines Ltd v. Higgins" (2002). *2002 Decisions.* Paper 128.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/128

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 15, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-4205

U.S. EXPRESS LINES, LTD.; BRENT NOYES, M.D.; LEO
HAMILTON; LENORE MYERS; FRANCIS MYERS, H/W;
MICHAEL PACOR; LLOYD FEIGENBAUM; LYNDA
FEIGENBAUM, H/W; KENNETH DETATO; BRAD MOSES;
MARY POSSI; ERIC N. RUBINO; THOMAS CRAWFORD;
SUSAN M. SIMPSON; JOHN BURKE; GREGORY REPPA;
LEO RASIS, M.D.; JEFFREY W. ALLEN; PATRICIA C.
ALLEN; WARREN CONSTANTINE, JR.,

     Appellants

v.

ANN-MICHELE HIGGINS, ESQ.; RAWLE & HENDERSON;
UNITED SHIPPING SERVICES THREE, INC.; UNITED
SHIPPING SERVICES ONE, INC.; HACI ISMAIL
KAPTANOGLU SHIP MANAGEMENT & TRADING CO.,
LTD.; HARRY G. MAHONEY, ESQ.; THOMAS C.
SULLIVAN; DEASEY, MAHONEY & BENDER, LTD.;
SUNRISE MARITIME INC; ZODIAC MARITIME AGENCIES,
LTD.; A. ROBERT DEGEN, ESQ.; FOX, ROTHSCHILD,
O'BRIEN & FRANKEL; TRADE SHIPPING MANAGEMENT,
S.A.; LAURENCE SHTASEL, ESQ.; JEFFREY S. MOLLER,
ESQ.; BLANK ROME COMISKY & MCCAULEY,

     Appellees

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 99-cv-00992)
District Judge: Honorable John R. Padova

Argued November 26, 2001

Before: ROTH, FUENTES and WEIS, Circuit Judges

Filed February 15, 2002

Thomas S. Myers, Jr., Esquire
  (ARGUED)
1800 East Lancaster Avenue
Paoli, Pennsylvania 19301

Vincent P. DiFabio, Esquire
Platt, DiGiorgio & DiFabio
1800 East Lancaster Avenue
Paoli, Pennsylvania 19301

Attorneys for Appellants

Robert B. White, Jr., Esquire
  (ARGUED)
Law Offices of Robert B. White, Jr.,
  P.C.
1515 Market Street, Suite 1800
Philadelphia, Pennsylvania 19102

Jeffrey P. Lewis, Esquire
McKissock & Hoffman, P.C.
P.O. Box 3086
West Chester, Pennsylvania 19381

William H. Lamb, Esquire
Lamb, Windle & McErlane, PC
24 E. Market Street
West Chester, Pennsylvania 19381

Albert P. Massey, Jr., Esquire
Lentz, Cantor & Massey, Ltd.
Chester County Commons
20 Mystic Lane
Malvern, Pennsylvania 19355

Attorneys for Appellees

2

OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal, we decide that the defendant lawyers' decision to invoke federal case law, rather than a procedural rule, in persuading a district judge to issue a maritime attachment does not give rise to a cause of action for malicious abuse of civil process under state law. The lawyers did not act in bad faith because they disclosed the existence of the alternative courses to the Court. We also conclude that the conflict between the procedural rule and the opinion of a United States Court of Appeals raises a federal question sufficient to support removal of the malicious abuse of process claim from the state court to the federal forum. We will affirm the District Court's judgment in favor of the defendants.

Plaintiff U.S. Express Lines, Ltd. ("Express Lines") is a Pennsylvania corporation that chartered vessels from various shipowners to carry cargo for its customers. The company maintained its principal place of business in Paoli, Pennsylvania, within the Eastern District of Pennsylvania.

Express Lines had arranged financing through a line of credit from Founders Bank, secured by certificates of deposit purchased by the individual plaintiffs. When the company encountered cash flow problems in 1997, it began negotiating for further financial support from other institutions. In January 1998, it advised its creditors, including the defendant vessel owners, of the encouraging progress of its efforts.

Nevertheless, on February 11, 1998, one of the vessel owners, through its counsel, defendant Ann–Michele Higgins of defendant law firm Rawle & Henderson, applied to the United States District Court for the Eastern District of Pennsylvania for the attachment of "all assets, goods, and chattels, belonging to" Express Lines. In seeking the attachments, the defendant attorneys cited as governing law an opinion of the Court of Appeals for the Eleventh

3

Circuit, rather than the Supplemental Rules for Admiralty Claims. On February 17, 1998, the District Court ordered that the certificates of deposit at Founders Bank be attached.

Other creditor vessel owners took similar action through their attorneys, defendants A. Robert Degen and the law firm of Fox, Rothschild, O'Brien, & Frankel, Ltd., Laurence Shtasel and Jeffrey S. Moller, both of defendant Blank Rome Comisky & McCauley, and Harry G. Mahoney and Thomas C. Sullivan, of the defendant law firm Deasey, Mahoney, & Bender, Ltd. As a result of these legal actions, Express Lines defaulted on its loan agreements and was forced to suspend and eventually cease its commercial operations.

The District Court vacated the attachments on November 5, 1998, concluding that its decision to depart from the restrictions imposed by Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule B") was in error. The Court then directed the parties to arbitration in accordance with the terms of the charter party, ordered that the assets that Founders Bank had deposited in an interpleader action remain in the Court's custody, and retained jurisdiction pending arbitration.

On January 28, 1999, Express Lines and the individual owners of the certificates of deposit at Founders Bank filed suit in the Court of Common Pleas of Chester County, Pennsylvania, against the vessel owners and their various counsel. The complaint sought compensatory and punitive damages for abuse of process, conspiracy, wrongful use of civil proceedings, and other torts.

Plaintiffs contend that defendants secured the writs of attachment in direct violation of Rule B, which precludes the seizure of maritime assets if the debtor is found within the district in which the litigation is commenced. They assert that defendants were well aware that Express Lines kept its principal office in the Eastern District of Pennsylvania and thus, they acted in bad faith in seeking attachments in that district.

The defendant vessel owners were never served with process, and the claims against them were ultimately dismissed.1 The lawyer defendants removed the case to the District Court, and the plaintiffs moved to remand. The District Court refused, concluding that, based as it was on the issuance of maritime attachments, "[t]he federal element [of the litigation] cuts to the heart of each of Plaintiffs' claims" and, therefore, federal question jurisdiction existed.

The District Court dismissed the case under Federal Rule of Civil Procedure 12(b)(6), holding that the defendant lawyers' actions were privileged because they had not misled the Court as to the underlying facts or relevant law in obtaining the attachment. The Court added that there had been no abuse of process in the defendants' use of maritime attachments to collect debts whose legitimacy plaintiffs did not contest. Because the writs had been issued with court authorization, the defendants had not acted in a grossly negligent manner or without probable cause. Accordingly, the Court held that the plaintiffs had failed to establish their state law claims.

In this appeal, plaintiffs contend that the defendant attorneys misled the Court in securing the attachments, and that the efforts to obtain them were made in bad faith because the charter party required that disputes be arbitrated. The plaintiffs also assert that the District Court erred in declining to remand the case to the state court.

The defendants deny that they engaged in any deception and argue that the state law claims fail as a matter of law. Alternatively, they contend that because the challenged activity occurred in a federal court, no state cause of action may be applied to their conduct. Finally, defendants assert that because of an omission in the plaintiffs' notice of appeal, this Court lacks appellate jurisdiction.

We exercise plenary review of the District Court's dismissal for failure to state a claim under Rule 12(b)(6).

_____

1. The plaintiffs have not contested the dismissal of the defendant shipowners and have treated this case as directed solely against the lawyers. We will do likewise.

5

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). When considering a Rule 12(b)(6) motion, courts accept as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to the plaintiffs. Id. Although a district court may not consider matters extraneous to the pleadings, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192 (3d Cir. 1993) (matters of public record).

We review de novo a district court's denial of remand. Angus v. Shiley Inc., 989 F.2d 142, 143 n.1 (3d Cir. 1993); see also Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999).

I.

We first address jurisdictional issues. The plaintiffs' complaint alleges violations of state law. Because the parties are not diverse, our jurisdiction, as well as that of the District Court, must rest upon the existence of a federal question. 28 U.S.C. SS 1331, 1441(b).

At the outset, we address an error in the defendants' brief that cites Lusardi v. Xerox Corp., 975 F.2d 964 (3d Cir. 1992), as dispositive of our appellate jurisdiction. Lusardi holds that, with certain exceptions not pertinent here, an appeal taken from a specified judgment or part of a specified judgment does not confer upon the court of appeals jurisdiction to review other judgments or portions not specified or inferred from the notice of appeal. 975 F.2d at 971–72.

Defendants contend that because plaintiffs did not designate the order denying remand in their notice of appeal, we do not have authority to review that issue. This argument is oblivious to the duty of federal courts to examine their subject matter jurisdiction at all stages of the litigation sua sponte if the parties fail to raise the issue.

6

That obligation extends to removal cases, as well as to those originally filed in the district courts. Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999); Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila., 657 F.2d 29, 30 (3d Cir. 1981). Clearly, Lusardi is inapposite to the removal jurisdiction issue in this case.

Any civil action brought in state court may be removed by the defendant to the federal district court in the district where such action is pending, if the district court would have original jurisdiction over the matter. 28 U.S.C. S 1441(a); Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 7-8 (1983). Where the parties are not diverse, removal is appropriate only if the case falls within the district court's original "federal question" jurisdiction: "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. SS 1331, 1441(b); Franchise Tax Bd., 463 U.S. at 8.

In determining whether a case arises under federal law, courts are instructed to look to the plaintiff 's "well-pleaded complaint." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). It is not enough that a federal question is or may be raised as a defense. Id.; Trent Realty, 657 F.2d at 33. "[T]he controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa., 605 F.2d 119, 122 (3d Cir. 1979) (quoting Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 113 (1936)). Attachments to the complaint are considered part of it.

The state suit need not invoke a federal law in order to "arise under" it for removal purposes. It is sufficient that the merits of the litigation turn on a substantial federal issue that is "an element, and an essential one, of the plaintiff 's cause of action." Gully, 299 U.S. at 112. The controversy must be "genuine and present . . . not merely . . . conjectural." Id. at 113. In short, the federal law "must be in the forefront of the case and not collateral, peripheral, or remote." Merrell Dow, 478 U.S. at 813 n.11; see also United Jersey Banks v. Parell, 783 F.2d 360, 367 (3d Cir. 1986) (no federal question existed because right to relief under state law did not require resolution of a substantial question of federal law). It need not, however, be a situation

7

in which federal law completely preempts state law. See Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306 (3d Cir. 1994) (discussing "complete preemption" doctrine).

The case before us does not involve the "artful pleading" doctrine, which requires a court to peer through what are ostensibly wholly state claims to discern the federal question lurking in the verbiage. See, e.g., United Jersey Banks, 783 F.2d at 367. The complaint filed in the state court is quite detailed and is augmented by numerous documents, such as the motions for attachment, the charter party, and the order attaching Express Lines' assets. The complaint and the documents affixed to it charge the defendants with malicious abuse of process in causing the District Court to override Rule B's restrictions in erroneous reliance on a Court of Appeals opinion.

The plaintiffs argue that the mere fact that the property attachments were granted pursuant to maritime law is an inadequate basis for removal. They point out that under the saving to suitors clause, 28 U.S.C. S 1333(1), federal and state courts have concurrent jurisdiction in maritime matters. See Supplemental Rule B(1); Romero v. Int'l Terminal Operating Co., 358 U.S. 354 (1959); In re Dutile, 935 F.2d 61, 62-63 (5th Cir. 1991); Furness Withy (Chartering), Inc., Panama v. World Energy Sys. Assocs., Inc., 854 F.2d 410, 411 n.1 (11th Cir. 1985).

The saving to suitors clause "preserves alternatives of suing on the `law side' of the federal court or in state court, with admiralty and maritime law applied to the claim." George K. Walker, Supplemental, Pendent & Ancillary Jurisdiction in Admiralty and Maritime Cases: The ALI Federal Judicial Code Revision Project and Admiralty Practice, 32 J. Mar. L. & Com. 567, 568 (2001); see also id. at 568 n.8 (listing cases); Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 444-45 (2001) (explaining that saving to suitors clause preserves concurrent jurisdiction of state courts over some admiralty and maritime claims); 14A Charles A. Wright et al., Fed. Prac. & Proc. S 3672, at 301-05 (3d ed. 1998). The plaintiffs' argument would carry weight if their state cause of action were a maritime one. But it is not; it is a claim for malicious use of process, a state tort not confined to admiralty.

The Supreme Court, construing federal question jurisdiction in the removal context, has held that admiralty cases do not fall within the scope of 28 U.S.C.S 1441, which designates as appropriate for removal only those cases "arising under the Constitution, treaties or laws of the United States." Romero, 358 U.S. at 368-69. Thus, an admiralty case filed in state court may only be removed if there exists some independent basis for federal jurisdiction, such as diversity of citizenship. Id. at 380-381. We need not here discuss the logic or reasoning of Romero , which has spawned more than its share of commentary.2 It is enough for us to recognize its existence, because we conclude that it is not applicable.

As we have noted, the removed case is not an admiralty action but one involving state tort law. Moreover, the federal question at the heart of this litigation is the applicability and construction of Supplemental Rule B. Although the Rule sets out procedures to be followed in maritime attachments, it is in fact part of the Federal Rules of Civil Procedure, adopted under the authority of the Rules Enabling Act, 28 U.S.C. S 2072.

The Rules of Practice in Admiralty and Maritime Cases, which took effect in 1920, were rescinded as of July 1, 1966. At that time, admiralty rules were merged into the Rules of Civil Procedure. This consolidation was similar to that which abolished the distinction between law and equity.

_____

2. See, e.g., Kenneth G. Engerrand, Removal and Remand of Admiralty Suits, 21 Tul. Mar. L.J. 383, 385 (1997) (discussing removal of admiralty cases and stating that "[d]espite the fact that the `congressional language
. . . is perfectly understandable in ordinary English,' the determination whether admiralty cases can be removed has been affected by historical accident rather than traditional principles of statutory interpretation;" id.
at 386-90 (explaining Romero's effect on federal question jurisdiction in admiralty claims); George Rutherglen, The Federal Rules for Admiralty and Maritime Cases: A Verdict of Quiescent Years, 27 J. Mar. L. & Com. 581, 590-92 (1996) (discussing complexities in saving to suitors clause actions resulting from Romero); David J. Sharpe, The Future of Maritime Law in the Federal Courts: A Faculty Colloquium, 31 J. Mar. L. & Com. 217, 232-34 (2000) (recognizing the confusion as to removal in admiralty).

Since 1966, admiralty procedure has therefore been governed by the Federal Rules of Civil Procedure. All rules governing these procedures are recommended by the Advisory Committee on Civil Rules and adopted in accordance with the conventions of the Rules Enabling Act. Although Rule B delineates procedures that are particularly applicable to the unique features of maritime attachments, it is nonetheless an integral part of the Federal Rules of Civil Procedure.

It is noteworthy that Romero was decided in 1959, prior to the consolidation of the admiralty and civil rules. Thus, any effect that Romero might have had on the construction of rules of admiralty procedure was abrogated by that consolidation. Support for this position is found in the language of the Rules Enabling Act itself, which provides that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. S 2072(b); see Henderson v. United States, 517 U.S. 654 (1996) (holding that Fed. R. Civ. P. 4 superseded service provision in the Suits in Admiralty Act).

At the heart of each of the plaintiffs' state law claims is the assertion that the defendants acted in bad faith by urging the District Court to disregard a federal rule of procedure, which would have barred the attachments, and to rely instead on case law, which permitted the seizures. The plaintiffs have thus alleged a substantial question of federal law involving an apparent clash between a procedural rule and a contrary holding by a United States Court of Appeals.3 Moreover, this conflict arises in the area of maritime attachments, a subject of particular concern to the federal courts, and one where national uniformity is of some importance. See Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 209–11 (1996) (discussing various contexts in which "vindication of maritime policies

_____

3. That the federal question was an essential, and ultimately dispositive, element is demonstrated by the fact that were we to decide that Leonhardt, discussed infra, was the correct statement of the law, the plaintiffs' case could be dismissed on that basis alone. Moreover, Express Lines sustained its injury at the time the attachments were served and the assets seized. The District Court's decision vacating the attachments came too late to save the company.

demanded uniform adherence to a federal rule of decision, with no leeway for variation or supplementation by state law."). Although not determinative, it is worth noting that this case also implicates the Federal Arbitration Act, 9 U.S.C. S 1 et seq.

Fundamentally, the plaintiffs argue that the Eleventh Circuit opinion is incorrect, and it is that allegedly erroneous interpretation of federal law upon which their state claim depends. Where a plaintiff 's complaint requires the juxtaposition of a court of appeals decision and an apparently conflicting procedural rule, the federal courts may properly claim jurisdiction. This is particularly so where, as here, the decision in controversy has not been overruled or reversed. The Eleventh Circuit opinion is a carefully reasoned exposition, concluding that Rule B does not limit admiralty's historic jurisdiction. The Court did not overlook Rule B, but analyzed it and found that its restrictions did not apply.

We are persuaded that in the unique circumstances here, the federal issue set forth in the complaint is an essential element of the plaintiffs' cause of action. Accordingly, the case was properly removed and the District Court did not err in denying the motion to remand.

II.

Having resolved the jurisdictional issue, we now consider the federal and pendent state claims on the merits. We invoke our discretion in choosing to first consider the federal defenses to the state suit.

The fact that a federal question permits removal does not go so far as to support the defendants' contention that preemption applies. They argue that because the events complained of occurred in a federal court, the state claims are superseded and the plaintiffs are limited to the relief afforded by Federal Rule of Civil Procedure 11, 28 U.S.C. S 1927, and the inherent powers of a court as explicated in Chambers v. Nasco, Inc., 501 U.S. 32 (1991).

Not surprisingly, the plaintiffs disagree. They rely on Pennsylvania's Dragonetti Act, 42 Pa. C.S.A.S 8351 et seq.,

and common law, both of which provide a cause of action for the wrongful use of civil proceedings. The Act establishes liability when "[a] person who takes part in the procurement, initiation or continuation of civil proceedings against another" acts "in a grossly negligent manner" or without probable cause and primarily for an improper purpose. Id. S 8351(a). A plaintiff may recover under the Act for harm resulting from interference with the advantageous use of land, chattels or other things, and other expenses which include reasonable attorneys' fees, harm to reputation, specific pecuniary loss resulting from the proceedings, emotional distress, and punitive damages. Id. S 8353.

The recovery under Dragonetti can be more expansive than the sanctions available under Rule 11, which are generally limited to counsel fees or fines, or counsel fees alone under 28 U.S.C. S 1927. Even assessments made under the inherent power of the courts have not been held to cover such matters as consequential damages, loss to reputation, or emotional distress.4

The breadth of the remedy provided by the state statute is a strong indication of its substantive nature. Under the Rules Enabling Act, 28 U.S.C. S 2072(b), procedural rules may not supplant substantive rights but the line between

---

4. The damages that might be awarded for wrongful attachment have not been fully explored. Neither party has raised or briefed the preemption aspect in this context. A brief examination of the case law indicates that damages in this area, if awarded at all, generally consist of attorneys' fees, costs, and expenses "directly" attributable to the attachment. See Furness Withy (Chartering), Inc., Panama v. World Energy Sys. Assocs., Inc., 772 F.2d 802 (11th Cir. 1985) (no bad faith, therefore no damages awarded); Ocean Ship Supply, Ltd. v. MV Leah, 729 F.2d 971 (4th Cir. 1984) (same); Frontera Fruit Co., Inc. v. Dowling, 91 F.2d 293 (5th Cir. 1937) (same). See also Coastal Barge Corp. v. M/V Maritime Prosperity, 901 F. Supp. 325 (M.D. Fla. 1994) (damages assessed included attorneys' fees and expenses, direct and derivative damages); State Bank & Trust Co. of Golden Meadow v. Boat "D.J. Griffin," 755 F. Supp. 1389 (E.D. La. 1991) (attorney's fees and lost profits assessed). We have not encountered an award of such items as consequential damages, loss of reputation, or punitive damages that are available under the Dragonetti Act.

12

procedure and substance is notoriously difficult to draw. In Burlington Northern Railway Co. v. Woods, 480 U.S. 1 (1987), the Supreme Court held that "Rules which incidentally affect litigants' substantive rights do not violate" the Rules Enabling Act if they are "reasonably necessary to maintain the integrity of that system of rules." 480 U.S. at 5 (emphasis added).

Following that rationale, the Court later emphasized that Rule 11 was intended to deter frivolous suits in the district courts. Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 552-53 (1991). In pursuing that goal, courts can impose sanctions by way of attorneys' fees without reallocating the burdens of litigation, as prohibited by the American Rule set forth in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975). Id.

Business Guides also rejected the argument that "Rule 11 creates a federal common law of malicious prosecution." 498 U.S. at 553. Continuing, the Court stated, "[t]he main objective of the Rule is not to reward parties who are victimized by litigation," but to deter baseless filings. Id. Although it conceded that sanctioning a party might benefit its adversary, the Court was "confident that district courts will resist the temptation to use sanctions as substitutes for tort damages," id., and noted that in the event that a district court misapplied the Rule in a particular case, the error could be corrected on appeal. Id. at 554. Business Guides found no need for such a correction because there, the district court had properly declined to include consequential damages in awarding attorneys' fees and out-of-pocket expenses. Id.

In Tarkowski v. County of Lake, 775 F.2d 173, 175 (7th Cir. 1985), the court held that the state tort law of malicious abuse of process applies to federal litigation as well. Our experience in this field has been limited, but two of our opinions that we will discuss support that holding.

The Bankruptcy Code provides more extensive sanctions than those afforded by the Rules of Civil Procedure or 27 U.S.C. S 1927. Section 303(i)(2) of the Code permits the assessment of damages -- including those of a punitive nature -- caused by a person who files a petition for

13

involuntary bankruptcy in bad faith. 11 U.S.C. S 303(i)(2). Despite the broad scope of remedies available in the Code and the general exclusivity of the federal courts in bankruptcy, we have held that a state claim for malicious abuse of process was not preempted. Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 51-52 (3d Cir. 1988).

In that case, we discovered that because of a gap in the text the Code failed to provide a remedy against a creditor that had improperly filed an involuntary petition for bankruptcy against a debtor. We concluded that Congress did not intend preemption to extend to the point of barring a debtor from the use of a state remedy.5  Id.; see also Silver v. Mendel, 894 F.2d 598 (3d Cir. 1990) (malicious filing of involuntary petition for bankruptcy not protected by judicial privilege).

Our review of extant case law persuades us that the Federal Rules of Civil Procedure do not preempt claims for abuse of process and similar torts providing relief for misconduct in federal litigation. Therefore, victims of such misconduct may, in appropriate circumstances, bring suit to recover damages under state causes of action.

In a number of cases, district courts within this circuit have reached conflicting results on the preemption issue.6

_____

5. We recognize that the Court of Appeals for the Ninth Circuit has held that the Bankruptcy Code completely preempts state actions for malicious use of process, Gonzales v. Parks, 830 F.2d 1033 (9th Cir. 1987), and is thus in tension with Paradise Hotel.

6. Compare Mruz v. Caring, Inc., 39 F. Supp.2d 495 (D.N.J. 1999) (district court whose federal question jurisdiction has been invoked applies federal rather than state law on abuse of process), and Thomason v. Lehrer, 183 F.R.D. 161 (D.N.J. 1998) (federal court is exclusive forum to seek redress for litigation abuses committed in a federal suit), with Fumo v. Gallas, 2001 WL 115460 (E.D. Pa. Feb. 6, 2001) (federal law does not preempt state law claims), T.B. Proprietary Corp. v. Sposato Builders, Inc., 1996 WL 674016 (E.D. Pa. Nov. 20, 1996) (stating that neither Rule 11 nor 28 U.S.C. S 1927 preempts state law cause of action for abuse of process), Cannon v. Sheller, 825 F. Supp. 722 (E.D. Pa. 1993) (Dragonetti Act not preempted by ERISA where action does not relate directly or indirectly to ERISA plan), and Plavin v. Bristol Borough,
1988 WL 100814 (E.D. Pa. Sept. 27,1988) (recognizing that there is no federal tort of malicious prosecution, and state law reaches litigation abuses).

14

We recognize that some of these courts have relied on legitimate public policy concerns in concluding that the federal rules foreclose state claims in the nature of abuse of process arising out of federal litigation. We also acknowledge that inevitably conflicts will arise between the federal rules and state substantive claims.

Although federal preemption would forestall such controversies, the precepts of federalism and the congressional decision to restrict the sanctions available within the federal system militate against such a resolution of the problem. As in so many other overlapping areas of federal and state law, we must rely on the traditional comity between the two systems to deal adequately and innovatively with such common problems.

III.

Under Pennsylvania law, lawyers may be sued in their individual capacities for wrongful use of civil proceedings. E.g., Dietrich Indus., Inc. v. Abrams, 455 A.2d 119 (Pa. Super. 1982). That tort as applied in Pennsylvania conforms with section 674 of the Second Restatement of Torts. Rosenfield v. Pennsylvania Auto. Ins. Plan, 636 A.2d 1138, 1141 (Pa. Super. 1994). The Dragonetti Act's definition of the tort is in agreement with that of the Restatement, Rosen v. American Bank of Rolla, 627 A.2d 190, 192 (Pa. Super. 1993), and an attorney who knowingly prosecutes a groundless action to accomplish a malicious purpose may be held accountable under the Act. Elec. Lab. Supply Co. v. Cullen, 712 A.2d 304 (Pa. Super. 1998).

Some distinction has been drawn between malicious use of process and abuse of process. Malicious use has to do with the wrongful initiation of civil process, as contrasted with abuse, which is concerned with perversion of process after litigation has begun. Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila., 154 A.2d 585, 587 (Pa. 1959).

Whatever may have been the importance of that distinction before the Dragonetti Act was adopted, it appears that both torts are subsumed within the general scope of the Act, which includes persons who take part in the procurement, initiation or continuation of civil

15

proceedings for wrongful purposes. 42 Pa. C.S.A.S 8351(a). Liability attaches to those who act in a grossly negligent manner or without probable cause and primarily for a purpose other than adjudication of a claim. Id . In addition, the proceeding must have been terminated in favor of the person who invokes the Act. Id. S 8351(a)(2).

It may be seen that a party seeking redress under Dragonetti bears a heavy burden. Here, it is somewhat questionable whether the allegedly offending procedure was terminated in favor of the plaintiff. Although the attachments have been dissolved, the District Court, as noted earlier, retained jurisdiction pending arbitration. Thus, no final judgment has been entered in favor of the plaintiffs. Section 674(b) of the Restatement, however, makes an exception from the finality rule in ex parte proceedings. In view of the somewhat unusual status of the earlier litigation and in the interests of judicial economy, we will assume arguendo that we may, under state law, proceed to the merits because the ex parte attachment proceedings had been terminated in favor of the plaintiffs.

The plaintiffs' first contention is that seeking maritime attachments, despite the arbitration clause in the charter party, demonstrated bad faith. This argument is utterly lacking in merit. The Federal Arbitration Act provides that in admiralty actions, "the party claiming to be aggrieved may begin his proceeding . . . by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration . . . ." 9 U.S.C. S 8.

Indeed, so fundamental is the right to attach that the parties cannot consent in advance to forego that remedy. In The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 43 (1944), the charter party provided for arbitration but specifically precluded application of section 8. Nevertheless, the aggrieved party began legal process by foreign attachment. The Supreme Court held that although the parties had agreed to arbitrate, the attachment remedy could be enforced. Id. at 45-46. See also Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 275 (1932) ("By the express terms of S 8, the libel and seizure are authorized as an

16

initial step in a proceeding to enforce the agreement for arbitration . . . ."). Clearly, the defendants in this case did not act in bad faith by carrying out procedures authorized by the Federal Arbitration Act.

The plaintiffs next argue that the defendants, knowing that Federal Rule B did apply, nevertheless secured the writs of attachment by improperly prevailing upon the District Court to follow the opinion in Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottachi S.A. De Navegacion, 773 F.2d 1528 (11th Cir. 1985) (en banc). The District Court later released the attachments, believing that Rule B, rather than Leonhardt, provided the controlling law. The plaintiffs seize on this reversal by the District Court of its earlier ruling as evidence of the defendants' bad faith in misleading the court.

We cannot accept the plaintiffs' argument. The Leonhardt opinion was written by a distinguished judge of the Eleventh Circuit for an en banc court. The Court was fully aware of Rule B, but after reviewing the history of admiralty law determined that federal courts are empowered to apply maritime procedures as they existed at the time of the Constitution's adoption. Leonhardt, 773 F.2d at 1533. In the Court's view, Rule B was not intended to be the exclusive source of maritime attachments available to the court, nor was it intended to limit or impair the traditional power of the court in exercising admiralty jurisdiction. Id.

The defendants' motions for issuance of a writ of attachment stated, "This court has the power apart from Rule B to issue a maritime attachment" and cited Leonhardt. The defendants, therefore, did not misinform the District Court as to the interplay between Rule B and the Court of Appeals opinion. In announcing the decision to vacate the attachments, the District Judge acknowledged, "The Court may have been wrong but there was no deception on the Court."

There is a paucity of case law on this particular point, and it reaches the point of absurdity to contend that competent attorneys were guilty of bad faith in urging the District Court to follow this respectable authority. The fact that the District Court later reversed its reliance on the

17

Eleventh Circuit case and concluded that Rule B governed does not establish that the lawyers exercised bad judgment, let alone bad faith. Indeed, in a number of cases, Rule B has been attacked as being unconstitutional. See , e.g., Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d 627, 642-45 (9th Cir. 1982) (Byrne, J., dissenting).

We conclude that the plaintiffs have failed to establish bad faith as required under the Dragonetti Act and Pennsylvania common law. Accordingly, we affirm the District Court's dismissal of the state law claims.

Having explored the background at length and concluded that the plaintiffs have not shown bad faith on the part of the defendants, we find it unnecessary to resolve the conflict between Leonhardt and Rule B. On the facts, the plaintiffs cannot recover under either version of the law. Consequently, we will affirm the District Court's dismissal of the entire case.

The judgment of the District Court will be affirmed.

18

FUENTES, Circuit Judge, dissenting:

I respectfully dissent because, in my view, this case presents no federal element sufficient to confer 28 U.S.C. S 1441(b) "arising under" jurisdiction. Since this case was improperly removed to federal court, the District Court had no underlying jurisdiction to adjudicate the merits of Express Lines's action, and we are without appellate jurisdiction to address the merits of the appeal. I would agree with the Ninth Circuit, which held, under similar circumstances, that a previously dismissed federal action does not cause a subsequently filed state action for malicious prosecution to "arise under" federal law. See Berg v. Leason, 32 F.3d 422 (9th Cir. 1994).

The majority concludes that the conflict between a federal procedural rule and an opinion of the Eleventh Circuit "raises a federal question sufficient to support removal of the malicious abuse of process claim from the state court to the federal forum." See Maj. Op. at 3. Express Lines's underlying state court action, however, was filed only after the federal action had been dismissed, and thus only after it was no longer necessary to resolve any conflict between Leonhardt and Rule B. As the majority notes, Leonhardt has not been overturned by the Eleventh Circuit. At best, it remains the jurisprudence of another circuit, and it is undisputed that it is simply not the law of this Circuit. To my knowledge, the only time Leonhardt has been invoked by any court in this Circuit was by the District Court in the underlying attachment action here. The District Court, as previously noted, ultimately rejected Leonhardt , and its own earlier reliance on it, and this decision has not been appealed by either party. Therefore, any purported conflict between Leonhardt and the Federal Rules does not present a sufficient federal question upon which to predicate jurisdiction.

It is well settled that "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. S 1441(a)). Additionally, we have held that the removal statute should be strictly construed against removal and that if there is any doubt as to the propriety of a removal,

19

a case should not be removed to federal court. See, e.g., Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990); Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985).

In considering a motion to remand where federal question jurisdiction is at issue, three recognized requirements must be satisfied: (1) the federal question must arise from a well-pleaded complaint, see, e.g., Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998); Westmoreland Hospital Ass'n v. Blue Cross of Western Pennsylvania , 605 F.2d 119, 122 (3d Cir. 1979); (2) federal law must be an essential element of the plaintiff 's cause of action, see, e.g., Rivet, 522 U.S. at 475; and (3) the federal question must be substantial. See, e.g., City of Chicago v. International College of Surgeons, 522 U.S. 156, 164 (1997). I do not believe that any of these removal requirements were satisfied in this case.

1. The Well-Pleaded Complaint Rule

As the Supreme Court has held on several occasions, "[t]he presence or absence of federal-question jurisdiction is governed by the `well-pleaded complaint rule,' which provides that federal [question] jurisdiction exists only where a federal question is presented on the face of the plaintiff 's properly pleaded complaint." Caterpillar Inc., 482 U.S. at 392. See also American National Red Cross v. S.G. and A.E., 505 U.S. 247, 258 (1992); Oklahoma Tax Com'n v. Graham, 489 U.S. 838, 840-41 (1989). Thus, the asserted federal question must arise from a well-pleaded complaint, and not from the answer, the petition for removal, or an actual or theorized defense. Under the well-pleaded complaint rule, if a complaint is premised upon state law, federal question jurisdiction may be established only if "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims," or that, due to complete preemption, the plaintiff 's claim is "really one of federal law." See Goepel v. National Postal Mail Handlers Union, a Division of Luna, 36 F.3d 306, 310 (3d Cir. 1994) (internal quotations and citations omitted). Also, a state case may arise under federal law " `where the vindication of a right under state law necessarily turn[s] on some construction of federal law.' "

20

See Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808 (1986) (quoting Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 9 (1983)). "[T]he vast majority of the cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action." Id.

Here, however, none of Express Lines's causes of action were created by federal law, and nothing in the allegations Express Lines presented in its complaint calls for a resolution of any tension between the Eleventh Circuit's decision in Leonhardt and the Federal Rules. As previously noted, no genuine conflict exists in this Circuit between Leonhardt and the Federal Rules. To prevail in its case, Express Lines needs to show only that based upon what Defendants knew and believed, which are factual queries, they proffered Leonhardt without probable cause and for a purpose other than obtaining the proper adjudication of their claim. See 42 Pa. C.S.A. S 8351 (stating that "[a] person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings, . . . [if h]e acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based . . ."); Silver v. Mendel, 894 F.2d 598, 603-04 (3d Cir. 1990) (finding that, under the Dragonetti Act, the "imposition of liability for the wrongful use of civil proceedings [in Pennsylvania] occurs only when litigation is instituted both without probable cause and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based"). In other words, Express Lines needs to show only that Defendants acted either negligently or without probable cause, and without a proper purpose in proffering Leonhardt .1

Since no genuine conflict exists between Leonhardt and the Federal Rules in this Circuit, any legal assertions as to
_____

1. Since I do not believe we have the requisite jurisdiction to address this
case on its merits, I will refrain from commenting on the strength of Express Lines's claims or evidence.

21

the validity of Leonhardt, if made at all, would only properly be made by Defendants in their Answer or in their defense. Neither invocation, according to the Supreme Court, is adequate to confer federal question jurisdiction.

2. The "Essential" Element Requirement

In accordance with Supreme Court jurisprudence, federal law must be an essential element of a plaintiff 's cause of action in order to confer federal subject matter jurisdiction. The meaning of the "essential element" requirement is best stated in Hunter v. United Van Lines, 746 F.2d 635 (9th Cir. 1984):

> [A court must] determine whether the federal element in the claim was "basic" as opposed to "collateral," and "necessary" as opposed to "merely possible." . . . . Similarly, courts have looked to whether the federal element in the claim was "pivotal," . . . or"substantial," . . . as opposed to merely "incidental[ ]," . . . or whether it was "direct and essential" as opposed to "attenuated," . . . or "paramount" as opposed to "collateral," . . . . Thus, the resolution of the federal question must play a significant role in the proceedings.

Id. at 646 (internal citations omitted). Here, far from showing that a federal issue played a "significant role in the proceedings," the majority determined that it was "unnecessary" to resolve the issue asserted by Defendants as the basis for removal. See Maj. Op. at 18. That this case may be decided without resolving any alleged tension between Leonhardt and Rule B severely undermines the idea that this issue was essential to evaluating plaintiff 's claims. The majority correctly states that a federal issue sufficiently essential to invoke federal jurisdiction must be "genuine and present, [and] not merely . . . conjectural." See id. at 7 (citing Merrell Dow, 478 U.S. at 813-14 & n.11). Yet, it is difficult to understand how an issue could be any more conjectural or any less essential than one whose disposition is explicitly deemed "unnecessary."

3. The "Substantial" Federal Question Requirement

As the majority notes, the federal law present in a properly removed case "must be in the forefront of the case

22

and not collateral, peripheral, or remote." Yet from the outset, Express Lines's case was clearly comprised solely of state law claims, and the majority's ability to resolve this case without addressing the purported federal issue only highlights the fact that any federal issue in this case is "collateral, peripheral, or remote."

Further, in Merrell Dow, the Supreme Court held that no substantial federal question existed where the plaintiff alleged a violation of a federal statute as an element of a state cause of action. The Court explained that"[we have] sometimes found that formally federal causes of action were not properly brought under federal-question jurisdiction because of the overwhelming predominance of state-law issues." Merrell Dow, 478 U.S. at 814 n. 12. Invoking an earlier ruling, the Court noted that "the violation of the federal standard as an element of state tort recovery did not fundamentally change the state tort nature of the action." Id. (citing Moore v. Chesapeake & Ohio R. Co., 291 U.S. 205, 216-17 (1934)). The Court also noted that "S 1331 [federal question] decisions can best be understood as an evaluation of the nature of the federal interest at stake." Id. (emphasis in original).

Here, as in Merrell Dow, the state law nature of Express Lines's claims is fundamentally unchanged by the asserted tension between Leonhardt and the Federal Rules. There is also little, if any, cognizable federal interest in having a federal court in our Circuit assess the legitimacy of an Eleventh Circuit case whose viability is not an open issue anywhere in this Circuit.

Following the guidance of Merrell Dow, the Ninth Circuit has held in a case very similar to ours that an underlying prior federal action does not render a fundamentally state law action cognizable in federal court. In Berg , the plaintiff brought a malicious prosecution action in state court after successfully defending himself in a federal court proceeding in which he was accused of violating federal securities and racketeering laws. The defendant removed to federal court, and the District Court denied the plaintiff 's Motion to Remand. On appeal, the Ninth Circuit held that "the federal element is insufficiently substantial to confer`arising under' jurisdiction because the malicious prosecution court need

23

only decide whether the underlying claim was `legally tenable[;]' the cause of action is created by state law, and state law controls the standard by which the strength of the federal claim in the underlying action is measured." Berg, 132 F.3d at 423. The Ninth Circuit elaborated that"federal law cannot be controlling when the degree of substance in the federal claim necessary to trigger the state-law cause of action is a question of state law." Id. at 425. Ultimately, then, "federal law is not dispositive because the degree of strength required to put the underlying claim over the probable cause threshold is determined by state law." Id. The same conclusion applies here.

In examining the state law elements of the plaintiff 's claim, the Ninth Circuit noted that, far from the case requiring a legal resolution of federal questions,"[a] factfinder must determine what the defendant knew or believed about the facts." Id. Similarly, here, the subjective beliefs, purpose, and purported bad faith of the Defendants are at issue, and "the court looks at the merits of a claim for malicious prosecution through the prism of state law." Id.

This case only asks whether Defendants' underlying claim, that Leonhardt could trump the Federal Rules, was legally viable enough to have been asserted legitimately and not in contravention of the Dragonetti Act. Express Lines's case presents no real or substantial question of federal law that compels resolution in a federal court. Rather, their case was, from the outset, a state case that was properly brought in state court originally.

For the aforementioned reasons, I would find that this case was improperly removed to federal court, that the District Court had no underlying jurisdiction to adjudicate the merits of Express Lines's claim, and that we are thus without appellate jurisdiction to entertain this appeal. I respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit