J-S24010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GARTH LANSAW & DEBORAH LANSAW<br><br>Appellants<br><br>v.<br><br>FRANK ZOKAITES D/B/A ZOKAITES CONTRACTING, INC., D/B/A ZOKAITES PROPERTIES, L.P., ZOKAITES CONTRACTING, INC., D/B/A ZOKAITES PROPERTIES, L.P.; ZOKAITES PROPERTIES, L.P. D/B/A ZOKAITES CONTRACTING, INC., JEFFREY HULTON, ESQUIRE F/D/B/A BRANDT,MILNES & REA, P.C.; AND BRANDT MILNES & REA, P.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br>No. 708 WDA 2016 |

Appeal from the Order April 26, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 15-018654

BEFORE: PANELLA, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J. **FILED JUNE 06, 2017**

Appellants, Garth and Deborah Lansaw, appeal from the order entered

in the Allegheny County Court of Common Pleas, granting the preliminary

objections of Appellees, Frank Zokaites d/b/a Zokaites Contracting, Inc.,

d/b/a Zokaites Properties, L.P., Zokaites Contracting, Inc., d/b/a Zokaites

Properties, L.P.; Zokaites Properties, L.P. d/b/a Zokaites Contracting, Inc.,

_____

[*] Former Justice specially assigned to the Superior Court.

Jeffrey Hulton, Esquire f/d/b/a Brandt, Milnes & Rea, P.C.; and Brandt Milnes & Rea, P.C., and dismissing Appellants' complaint. On appeal, Appellants claim that the trial court erred by dismissing their complaint based upon a lack of subject matter jurisdiction. After careful review, we affirm.

The trial court summarized the relevant facts and procedural history as follows.

    In 2015, [Appellants] filed a civil complaint in the instant case. Along with naming [] Zokaites as an individual Defendant, the complaint names Zokaites Contracting, Inc., and Zokaites Properties, L.P., apparently on the theory that [] Zokaites did or does business as or through those entities. [Appellants'] complaint also names [Attorney Hulton] as counsel or former counsel for the Zokaites Defendants. Additionally, [Appellants'] complaint lists Brandt, Milnes, & Rea, P.C. as a [d]efendant, seemingly because [Appellants] believe [Attorney] Hulton worked for or through that corporation. The complaint contends that all [Appellees] should be held liable for abuse of process, for intentional infliction of emotional distress [("IIED")], and for loss of consortium supposedly caused by [Appellees'] collective and/or individual behavior. The complaint allegations underlying these contentions can be summarized as follows.

    From roughly 1999 through 2007, as part of their daycare business, [Appellants] leased certain realty from [] Zokaites. Disputes between [Appellants] and Zokaites arose with respect to the rent for the realty. [Appellants] claim that, in the course of those disputes, Zokaites bullied, intimidated, stalked, and otherwise harassed [Appellants] in various ways at various times. Because of the ongoing disputes and Zokaites' alleged conduct, [Appellants] decided to end their tenancy with him. Accordingly, they moved their business from his property.

    In alleged retaliation for [Appellants'] decision to end their tenancy, Zokaited supposedly subjected [Appellants] to bad faith civil litigation beginning in 2001 and continuing for years thereafter. During those years of litigation, Zokaites allegedly instituted one or more baseless suits against [Appellants] and, in doing so, filed a large number of frivolous docket entries – the

suit(s) and docket entries having been designated simply to harass and annoy [Appellants] while causing them undue expense. Furthermore, [Appellants] contend that, in addition to engaging in baseless litigation, Zokaites injured [Appellants'] business by threatening and harassing their customers and business associates. [Appellants] also allege that, as a result of Zokaites' foregoing behavior, [Appellants] were forced to file bankruptcy in 2006 at No. 06-23936 in the Bankruptcy Court for the Western District of Pennsylvania.

The civil complaint in the instant suit also points out that [Appellants] and Zokaites were involved in multiple adversary proceedings as part of [Appellants'] bankruptcy.[1]

[1] The proceedings were numbered 06-02645-TPA, 06-02659-TPA, and 13-02037-TPA.

During the adversary proceedings, [Appellants] sought financial and emotional damages as a consequence of Zolkaites' alleged actions discussed *supra* (i.e., harassment, frivolous litigation, and interference with [Appellants'] business). [Appellants'] current complaint also contends that, during the adversary proceedings, Zolkaites continued to engage in abusive and wrongful conduct by filing hundreds of frivolous docket entries.

The Bankruptcy Court resolved the last of the adversarial claims by January 2015, when the court issued a memorandum and order at No. 13-02037-TPA awarding [Appellants] an aggregate of $50,100.00 in damages against Zokaites. Thereafter, still in 2015, Zolkaites appealed to the District Court at No. 2:15-cv-404. The District Court affirmed the Bankruptcy Court's judgment and, on April 28, 2016, entered its final order to that effect.

In October 2015, while the bankruptcy case and Zolkaites' appeal to the District Court were pending, [Appellants] instituted the present suit in state court by writ. Subsequently, in November 2015, they filed the subject complaint. In addition to containing all of the allegations discussed *supra*, the complaint alleges that Zolkaites' appeal to the District Court (*i.e.*, the appeal of the award against him in the adversary proceedings) was frivolous. At [p]aragraph 26, the complaint acknowledges that the bankruptcy case/litigation was pending when the complaint was filed. Finally, the complaint seems to contend

- 3 -

that, by acting as Zokaites' legal representatives, [Attorney] Hulton and Brandt, Milnes, & Rea, P.C., took part in Zokaites' overall alleged misconduct.

By March 2016, all [Appellees] had filed preliminary objections to [Appellants'] complaint. In their respective objections, [] Zokaites and Brandt, Milnes, & Rea, P.C. argued, *inter alia*, that [Appellants'] claims were preempted by the Bankruptcy Code, thereby depriving this court of jurisdiction over the instant suit. [Attorney] Hulton, while raising arguments of his own, also joined in the preemption theory advanced by the other [Appellees]. [Appellants] filed various preliminary objections to all [Appellees'] objections.

[The trial] court held a hearing on all preliminary objections on April 11, 2016. On April 26, 2016, [the trial] court overruled [Appellants'] preliminary objections, sustained the preliminary objections filed by each [Appellee] on the basis of a lack of subject matter jurisdiction, and dismissed the instant complaint. The Lansaws subsequently appealed to the Superior Court at 708 WDA 2016.

Trial Court Opinion, 8/18/16, at 2-5.

On appeal, Appellants contend that the trial court committed an error of law by dismissing their complaint based upon an alleged lack of subject matter jurisdiction due to bankruptcy preemption. **See** Appellants' Brief, at 9, 16-20. Furthermore, even if the trial court were correct in determining it lacked subject matter jurisdiction, Appellants argue that the trial court erred by dismissing their complaint with prejudice. **See id**, at 9, 19.

Our scope and standard of review concerning issues of subject matter jurisdiction is as follows.

Jurisdiction over the subject matter is conferred solely by the Constitution and the laws of the Commonwealth. The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the

general class to which the case presented for consideration belongs. Thus, as a pure question of law, the standard of review in determining whether a court has subject matter jurisdiction is *de novo* and the scope of review is plenary. Whether a court has subject matter jurisdiction over an action is a fundamental issue of law which may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*.

***Mazur v. Trinity Area School Dist***., 961 A.2d 96, 101 (Pa. 2008) (citation

omitted).

Additionally, appeals from orders sustaining a preliminary objection in

the nature of a demurrer are reviewed pursuant to the following standard.

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear from doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 208-209 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Here, the trial court found that the controlling Pennsylvania case law mandated dismissal of Appellants' abuse of process claim due to federal preemption. *See* Trial Court Opinion, 8/18/16, at 6-7 (citing *Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875 (Pa. 2006)). Further, although IIED and loss of consortium claims were not directly addressed in *Stone Crushed*, the trial court found that the reasoning underlying the finding of federal bankruptcy preemption for abuse of process claims applies to Appellants' IIED claims and loss of consortium claims as well. *See id*., at 6-7. Conversely, Appellants' contend that the bankruptcy preemption finding has been deemed *dicta* by subsequent courts, and therefore, cannot be a basis for dismissing their complaint. *See* Appellant's Brief, at 16. We agree with the solid reasoning of the trial court.

In Pennsylvania, *Stone Crushed* is the touchstone case for the matter of federal bankruptcy preemption of state law tort claims. In *Stone Crushed*, our Supreme Court granted allowance of appeal to determine, as a matter of first impression, whether the Bankruptcy Code preempts the entire field of bankruptcy. *See* 908 A.2d at 879-880. At the time the Court granted allocator, there was a split in the law between our Court's holding in *Shiner v. Moriarity*, 706 A.2d 1228 (Pa. Super. 1998), and the United States Court of Appeals for the Third Circuit's holding in *U.S. Express*

***Lines, Ltd. v. Higgins***, 281 F.3d 383 (3d Cir. 2002). Specifically, the Court in ***Shiner*** relied upon cases from other jurisdictions, which held that the Bankruptcy Code preempts state law entirely, and found that in Pennsylvania, the "Bankruptcy Code demonstrates Congress's intent to create a whole system under federal control therefore mandating the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal, thereby precluding state law remedies for abuse of its proceeding." 706 A.2d at 1238. Conversely, the Third Circuit in the ***Higgins*** case found that the Federal Rules of Civil Procedure did not preempt state law abuse of process claims or similar torts from actions arising in Bankruptcy Court. ***See*** 281 F.3d at 396.

Following an in-depth analysis of these cases, as well as relevant case law from other jurisdictions, our Supreme Court concluded that "the Bankruptcy Code and Federal Rules of Civil Procedure preempt [an appellant's] rights pursuant to state law for compensation in a wrongful use of civil proceedings or abuse of process claim grounded in bankruptcy court proceedings." ***Stone Crushed***, 908 A.2d at 887. The Court based its holding on its findings that Congress intended to govern the entire field of Bankruptcy, including tort state law claims, and that Fed.R.Civ.P. 11, 28 U.S.C. § 1927, and the Bankruptcy Code "potentially provide for the equivalent protection afforded by this Commonwealth to its citizens in a Dragonetti Act claim." ***Id***., at 880.

Based upon our independent analysis of **Stone Crushed**, we reject Appellants' contention that the Court's statement concerning the preemption of state law abuse of process claims by the Bankruptcy Code was mere *dicta*. Our Supreme Court specifically reviewed **Stone Crushed** in order to determine whether the Bankruptcy Code preempts state law, and clearly held that state law abuse of process claims are preempted by the Bankruptcy Code. **See id**., at 887. Further, to the extent that Appellants rely on federal case law that is in conflict with **Stone Crushed**, **see** Appellants' Brief, at 16-18, we remind them that, "absent a United States Supreme Court pronouncement," "federal court decisions do not control the determinations of the Superior Court." **NASDAQ OMX PHLX, Inc. v. PennMont Securities**, 52 A.3d 296, 303 (Pa. Super. 2012) (citation omitted).

The assertions identified by Appellants in their complaint that they aver underlie their claims, pertain to conduct in the bankruptcy court. Specifically, Appellants allege that through Appellee's filings in Bankruptcy Court, Appellee "intended to cause [Appellants] severe emotional distress" and that they caused Appellants "to suffer emotional pain and anguish." Appellants' Complaint, 10/24/15, at ¶¶ 8-9, 12-14 Based upon these allegations, it is clear that Appellants' claims are "grounded in bankruptcy court proceedings," and therefore preempted by the Bankruptcy Code. **Stone Crushed**, 908 A.2d at 887.

We also find that the reasoning underlying **Stone Crushed** supports the trial court's dismissal of Appellants' IIED and loss of consortium claims. **Stone Crushed** specifically focuses on the intent of Congress to preempt all state law claims for damages arising from conduct before a federal bankruptcy court. **See** 908 A.2d at 887. Here, Appellants' IIED and loss of consortium claims were "central to, and were either litigated as part of, or could have been litigated as part of, the [Appellants'] bankruptcy." Trial Court Opinion, 8/18/16, at 6-7 (citing **Stone Crushed**, 908 A.2d at 887). In fact, we note that Appellants were *successful* in litigating their IIED and loss of consortium claims in federal bankruptcy court. To allow them to re-litigate these claims in state court would be unjustifiable. Thus, because Appellants' IIED and loss of consortium claims are also preempted by the Bankruptcy Code, the trial court did not err by dismissing these claims based upon a lack of subject matter jurisdiction.

Lastly, we find no merit to Appellants' contention that the trial court erred by dismissing Appellants' complaint with prejudice. "Leave to amend lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party." **Blackwood, Inc. v. Reading Blue Mountain & Northern R. Co.**, 147 A.3d 594, 598 (Pa. Super. 2016) (citations omitted). "But liberality of pleading does not encompass a duty in the courts to allow successive amendments when the

initial pleading indicates that the claim asserted cannot be established." ***Behrend v. Yellow Cab Co.***, 271 A.2d 241, 243 (Pa. 1970).

That is the case here. As discussed, federal bankruptcy law preempted Appellants' claims. Appellants would never have been able to establish their right to litigate these claims in state court—regardless of the trial court permitting them to amend their complaint. Accordingly, the trial court's decision to withhold the right to amend the complaint was not in error.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/6/2017